# DILTON ROBINSON ET AL. *v.* THOMAS E. COUGHLIN ET AL.
## (SC 16891)

Norcott, Katz, Vertefeuille, Zarella and T. Sullivan, Js.

Argued April 24—officially released September 30, 2003

*William J. O'Sullivan*, for the appellants (plaintiffs).

*Kerry M. Wisser*, with whom was *Nathan A. Schatz*, for the appellee (defendant Stella Coughlin).

*Opinion*

ZARELLA, J. This appeal requires us to determine whether a transferee of fraudulently transferred assets may be required to pay damages under the Uniform Fraudulent Transfer Act (UFTA), General Statutes § 52-552a et seq., when the transferee reconveys those assets to the transferor and there is no claim that the assets depreciated in value between the time of the fraudulent transfer and the time of the reconveyance. We conclude that a transferee may not be held liable for damages under such circumstances. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On March 15, 1995, the plaintiffs, Dilton Robinson and The Summit Development, Ltd., commenced an unrelated action against the named defendant, Thomas E. Coughlin (debtor). In September, 1997, the parties entered into a settlement agreement

that called for the entry of a stipulated judgment against the debtor in the amount of $500,000.

In October, 1997, before the stipulated judgment was rendered, the debtor entered into a satisfaction of debt agreement with his wife, the defendant, Stella Coughlin (Coughlin), pursuant to which the debtor transferred certain assets[1] to Coughlin in satisfaction of various loans and guarantees that Coughlin had made in the 1990s for the benefit of the debtor.[2]

Subsequent to this transfer, in October, 1997, the trial court rendered judgment in favor of the plaintiffs in the amount of $500,000. The debtor possessed no assets at this time.

Thereafter, the plaintiffs filed the present action against the debtor and Coughlin alleging that the debtor's transfer of assets violated the provisions of UFTA. The plaintiffs sought damages, an order setting aside the 1997 transfer and an injunction barring the debtor and Coughlin from any further disposition of assets. In May, 2001, the parties were notified that a trial would commence on August 14, 2001. In June, 2001, before the case proceeded to trial, Coughlin entered into a written agreement with the debtor pursuant to which Coughlin reconveyed to the debtor the assets that had been transferred to Coughlin under the previous satisfaction of debt agreement. Within two months from the effective date of this reconveyance, the debtor had liquidated three of the four assets that had been reconveyed to him.

---

[1] The debtor transferred the following assets to Coughlin: (1) 588 shares of common stock in Coughlin and Company; (2) a 4.95 percent special limited partnership interest in Tucson Tiller Apartments, Ltd.; (3) a 7.67 percent general partnership interest in Washington Associates; and (4) a 16.67 percent special partnership interest in Tiller Associates.

[2] The parties agree that the aggregate value of the assets that the debtor had transferred to Coughlin was no greater than the total debt that the debtor had owed to Coughlin according to the satisfaction of debt agreement.

The case was tried to the trial court in April, 2002. In its memorandum of decision, the trial court determined that the plaintiffs had proven by clear and convincing evidence that the debtor and Coughlin had violated General Statutes § 52-552f (b).[3] The trial court rendered judgment in part for the plaintiffs against the debtor in the amount of $97,500, the value of the assets at the time of the fraudulent transfer, and judgment in part for Coughlin as to the plaintiff's claim against her. The trial court concluded that "Connecticut law is clear . . . that damages awarded against a fraudulent transferee [are] appropriate only where the transferee subsequently disposes of the transferred property and retains the proceeds. The amount of damages is limited to the proceeds a transferee retain[s] from such a disposition. A transferee is not required to forfeit any more than was wrongfully obtained. . . . Coughlin . . . reconveyed the property . . . and retained no proceeds. Therefore, judgment may not enter against her."

The plaintiffs appealed to the Appellate Court from that portion of the trial court's judgment that was rendered in favor of Coughlin. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2. On appeal, the plaintiffs claim that the trial court improperly determined that damages could not be awarded in connection with their claim against Coughlin merely because she reconveyed the fraudulently transferred assets.

---

[3] General Statutes § 52-552f (b) provides: "A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent." Pursuant to General Statutes § 52-552b (7) and (11), a spouse is an "insider" as that term is used in § 52-552f (b).

We note that Coughlin does not dispute the trial court's determination that the plaintiffs had proven the debtor's and Coughlin's violation of § 52-552f (b) by clear and convincing evidence.

As a threshold matter, we note that the parties dispute the appropriate standard of review. The plaintiffs maintain that, to the extent that they are challenging the trial court's legal conclusions, this court must determine whether those conclusions are legally and logically correct and whether those conclusions are supported by the facts found by the trial court. Coughlin, on the other hand, contends that, even if damages may be awarded in connection with the plaintiffs' claim against her, a decision not to award such damages is a matter of discretion for the trial court and can be overturned only upon a showing that the court has abused its discretion in declining to award such damages.

The plaintiffs claim that the trial court rendered judgment in favor of Coughlin because the court concluded, as a matter of law, that it could not award damages on the basis of Coughlin's reconveyance of the assets. Thus, the plaintiffs contend that, inasmuch as the trial court's decision was based on a conclusion of law rather than the exercise of judicial discretion, this court should exercise plenary review. We agree with the plaintiffs.

In its memorandum of decision, the trial court concluded that Coughlin reconveyed the fraudulently transferred assets and retained no proceeds, and that, consequently, "judgment *may not* enter against her." (Emphasis added.) Thus, the trial court's decision was not based on its exercise of discretion in awarding damages but, rather, on a legal conclusion, namely, that a transferee who retains no proceeds from the reconveyance of fraudulently transferred assets cannot be held liable for damages. When "the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 264 Conn. 266, 280, 823 A.2d 1172 (2003).

Coughlin claims that she cannot be held liable for damages in the present case because both UFTA and the common law permit only limited monetary relief against a transferee of fraudulently transferred assets. Coughlin claims that our case law historically has allowed a creditor in a fraudulent conveyance action to pursue the transferee only for the purpose of obtaining the specific property transferred or the proceeds derived therefrom, a long-standing principle that we will refer to as the "property and proceeds" rule. See, e.g., *Derderian* v. *Derderian,* 3 Conn. App. 522, 529, 490 A.2d 1008, cert. denied, 196 Conn. 810, 811, 495 A.2d 279 (1985). Thus, Coughlin maintains that the plaintiffs cannot recover damages from her in the present case because she reconveyed the fraudulently transferred assets and retained no proceeds.

Coughlin relies on *Litchfield Asset Management Corp.* v. *Howell,* 70 Conn. App. 133, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002), in support of her claim. In *Howell,* the Appellate Court discussed the relationship between the common law of fraudulent conveyances and the current statutory scheme. The court stated that "[t]he principle that it is unfair to impose unbounded liability on a third party for the debts of another is expressed in the statutory and common law of fraudulent conveyances, both of which impose limits on a plaintiff's ability to recover from a fraudulent transferee for the obligations of a debtor transferor. It is true that a creditor plaintiff in a fraudulent conveyance action may seek as remedies both damages and a setting aside of the wrongful conveyance. . . . Nonetheless, [common-law] principles do not authorize a general creditor to pursue the transferee in a fraudulent conveyance action for anything other than the specific property transferred or the proceeds thereof. . . .

"As such, a damages award against a fraudulent transferee generally is appropriate only where the transferee subsequently disposes of the transferred property and retains the proceeds of that disposition. In such a situation, the amount of the damages award against the transferee is limited to the proceeds it retained from the disposition of the transferred property, regardless of the total debt owed the plaintiff by the original transferor. . . .

"Thus, the gist of the rule of damages is that a fraudulent transferee is not required to forfeit anything more than that which he wrongfully obtained via the fraudulent transfer." (Citations omitted; internal quotation marks omitted.) Id., 144–46.

The plaintiffs claim that *Howell* incorrectly states the law because UFTA does not purport to be a wholesale codification of the common law. According to the plaintiffs, the plain language of General Statutes §§ 52-552h and 52-552i demonstrates that UFTA was enacted specifically to expand the range of a creditor's remedies beyond the common-law property and proceeds rule.[4] Although we agree with the plaintiffs that UFTA is not a wholesale codification of the common law, we nevertheless disagree that Coughlin can be held liable for damages in the present case.

---

[1] We note that the plaintiffs claim in their brief submitted to this court that Coughlin reconveyed the fraudulently transferred assets in reckless disregard of the interests of the plaintiffs. Thus, the plaintiffs claim that Coughlin cannot rely on any principle of law aimed at protecting innocent transferees. To the extent that the plaintiffs' claim suggests that the reconveyance itself was akin to a fraudulent transfer, we decline to address that claim. The plaintiffs did not allege such a theory in the present action and, accordingly, the trial court made no factual findings with respect to such a theory. Moreover, the fact that the trial court previously had denied the plaintiffs' request for a prejudgment remedy belies the plaintiffs' contention that Coughlin acted in reckless disregard of the plaintiffs' interests. If anything, the denial of prejudgment relief reasonably would suggest to Coughlin that the original transfer was legal.

We begin by reviewing the language of §§ 52-552h and 52-552i. General Statutes § 52-552h provides in relevant part: "(a) In an action for relief against a transfer or obligation under sections 52-552a to 52-552*l*, inclusive, a creditor, subject to the limitations in section 52-552i, may obtain: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee . . . (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property, (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee, or (C) any other relief the circumstances may require.

"(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."

The plain language of § 52-552h indicates that several of the remedies available under UFTA concern the asset transferred *or other property of the transferee.* If the legislature had intended to codify the common-law property and proceeds rule, it would not have provided a remedy that concerns property other than the fraudulently transferred assets and the proceeds derived therefrom.

Similarly, General Statutes § 52-552i provides in relevant part: "(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under subdivision (1) of subsection (a) of section 52-552h, the creditor *may recover judgment for the value of the asset transferred,* as adjusted under subsection (d) of this section, or the amount necessary

to satisfy the creditor's claim, whichever is less. . . ." (Emphasis added.) Thus, § 52-552i (b) also indicates that a creditor's remedies extend beyond the fraudulently conveyed property and the proceeds derived therefrom.

On the basis of the foregoing, we disagree with *Howell* to the extent that it suggests that UFTA is a wholesale codification of the common law of fraudulent conveyances. The plain language of UFTA demonstrates that its remedies extend beyond those available under the common-law property and proceeds rule. We agree with *Howell,* however, to the extent that the Appellate Court concluded therein that UFTA "is *largely* an adoption and clarification of the standards of the common law of [fraudulent conveyances]"; (emphasis added; internal quotation marks omitted) *Litchfield Asset Management Corp.* v. *Howell,* supra, 70 Conn. App. 145 n.7; and to the extent that the Appellate Court concluded that "a damages award against a fraudulent transferee *generally* is appropriate only where the transferee subsequently disposes of the transferred property and retains the proceeds of that disposition." (Emphasis added.) Id., 145.

The general rule expressed in *Howell* is particularly applicable when a transferee, such as Coughlin, returns the fraudulently transferred property to the judgment debtor. Unlike subsequent transfers to third party transferees, for example, a reconveyance of the fraudulently transferred assets serves the creditor's best interests because legal and equitable title is restored to the judgment debtor.

Particularly relevant to our analysis is a comment in American Jurisprudence that, "[a]lthough the rule is that as between the parties to an executed fraudulent conveyance, the transferee will not be compelled to return the property to the transferor, the transferee

may voluntarily restore or reconvey the property to the transferor. In fact, it has been said that while a fraudulent grantee is under no legal obligation to reconvey, he is under a moral obligation to do so. Therefore, all acts done by him in execution of this duty should be favorably considered in equity, since the moral obligation is a valuable and sufficient consideration for a reconveyance." 37 Am. Jur. 2d 633, Fraudulent Conveyances and Transfers § 140 (2001).

Notwithstanding the general rule, however, bankruptcy courts have awarded damages under analogous provisions of the United States Bankruptcy Code[5] when fraudulently transferred funds have dissipated while in the possession of the transferee; e.g., *In re Davenport*, 147 B.R. 172, 185 (Bankr. E.D. Mo. 1992); and when fraudulently transferred property has depreciated in value from the time of the fraudulent transfer. See, e.g., *In re Computer Universe, Inc.*, 58 B.R. 28, 32 (Bankr. M.D. Fla. 1986). Similarly, we recognize that depreciation or dissipation of the subject property, i.e., waste while in the possession of the transferee, can provide a basis upon which to award damages.

We now must consider what remedies were available in the present case when the trial court rendered judgment. Avoidance of the transfer under § 52-552h (a) (1) was not an available remedy because, after Coughlin had reconveyed the assets, there was, effectively, no transfer to avoid. The second remedy available under § 52-552h (a) (2) concerns prejudgment relief. In June, 1998, the plaintiffs applied for and were denied prejudgment relief. The trial court determined that, because the transfer of the assets was in satisfaction of debts owed by the debtor to Coughlin, there was no probable cause to sustain the plaintiffs' claim. The plaintiffs did not appeal from the denial of prejudgment relief.

---

[5] 11 U.S.C. § 101 et seq.

The third remedy, an injunction prohibiting the further disposition of assets or the appointment of a receiver under § 52-552h (a) (3), was not available when the trial court rendered judgment because Coughlin already had reconveyed the assets. Similarly, relief was not available under § 52-552h (b) when the trial court rendered judgment.

Section 52-552i (b) provides no basis for relief because, although a creditor may recover the value of the asset transferred, such recovery is allowed under § 52-552i (b) only to the extent that the transfer is voidable under § 52-552h (a) (1). As we have discussed previously in this opinion, avoidance of the transfer was not available under § 52-552h (a) (1) when the trial court rendered judgment inasmuch as the assets had been reconveyed. Thus, the only remaining provision that arguably could have provided a basis for an award of damages is General Statutes § 52-552h (a) (3) (C), which allows the court to award "any other relief the circumstances may require."

Section 52-552h (a) (3) (C), however, does not vest the court with unfettered discretion to award damages to creditors who have failed to avail themselves of all of the protections afforded under UFTA. To interpret § 52-552h (a) (3) (C) otherwise would render meaningless UFTA's scheme of remedies and the limits placed thereon.

The plaintiffs claim that transfers such as the one that occurred between Coughlin and the debtor render the protections afforded to creditors under UFTA meaningless unless they can recover damages from fraudulent transferees who effect a reconveyance of the fraudulently transferred assets. We disagree.

UFTA provided the plaintiffs with several available protections. First, prejudgment relief was available. Indeed, the plaintiffs attempted to obtain such relief

unsuccessfully. If the plaintiffs believed that the trial court improperly denied them prejudgment relief, they could have sought relief on appeal. Nevertheless, UFTA provides protection by allowing creditors to obtain prejudgment relief upon a showing of probable cause. Second, the plaintiffs obtained a judgment against the debtor in 1997 but did not attempt to get approval from the court to attach the transferred assets, or the proceeds derived therefrom, pursuant to § 52-552h (b), while those assets were in Coughlin's possession. Finally, the plaintiffs could have applied for a preliminary injunction under § 52-552h (a) (3) (A) before Coughlin reconveyed the assets to the debtor.

Thus, there were various protections available to the plaintiffs under UFTA that they ultimately did not pursue. The plaintiffs' claim that an award of damages should be an available remedy because UFTA affords them no other protections therefore must fail.

We conclude that because Coughlin reconveyed the assets to the debtor and the plaintiffs do not claim that the property depreciated in value between the time of the initial transfer and the time of the reconveyance, the trial court properly determined that the plaintiffs cannot recover damages from Coughlin under UFTA.

The judgment is affirmed.

In this opinion the other justices concurred.