**In re Michael Charles PICARD, Debtor.**

**Master–Halco, Inc., Plaintiff,**

v.

**Michael Charles Picard, Defendant.**

Bankruptcy No. 05–32010 (ASD).

Adversary No. 05–3140(ASD).

United States Bankruptcy Court,
D. Connecticut.

March 23, 2006.

George D. Royster, Jr., Esq., Halloran & Sage, LLP, Michael S. Wrona, Esq., Halloran & Sage, LLP, Hartford, CT, for the Plaintiff.

Jeffrey Hellman, Esq., Zeisler & Zeisler, Bridgeport, CT, for the Debtor.

## MEMORANDUM OF DECISION AND ORDER RE: MOTION TO DISMISS AND OBJECTION THERETO

LORRAINE MURPHY WEIL, Bankruptcy Judge.

Before the court is that certain Motion To Dismiss (Counts One, Three and Four of the Plaintiff's Complaint) (Adv. P. Doc. I.D. No. 6, the "Motion To Dismiss")[1] filed by the debtor Michael Charles Picard (the "Debtor"), and that certain Objection to the Motion To Dismiss (Adv. P. Doc. I.D. No. 10, the "Objection") filed by creditor Master–Halco, Inc. (the "Plaintiff"). The court has jurisdiction over this matter as a core proceeding, pursuant to 28 U.S.C. §§ 1334 and 157(b), and that certain Order dated September 21, 1984 of the District Court (Daly, C.J.).[2] For the reasons set forth below, the Motion To Dismiss will be granted in part and denied in part.

**1.** References to the docket of this chapter 7 case appear in the following form: "Doc. I.D. No. ___." References herein to the docket for this adversary proceeding appear in the following form: "Adv.P. Doc. I.D. No. ___." References to the audio record in this case appear in the following form: "___/___/05 Audio Record at ___:___:___." References herein to the docket for the District Court proceeding appear in the following form: "District Court Doc. I.D. No. ___."

## I. PROCEDURAL BACKGROUND

### A. The Chapter 7 Case

The Debtor commenced this chapter 7 case by the filing of a voluntary petition on April 21, 2005. (Doc. I.D. No. 2.) On June 2, 2005, the Debtor filed with this court a list of creditors, Schedules A–J, a Statement of Financial Affairs, and a Disclosure of Compensation of Attorney of Debtor. (Doc. I.D. No. 15.) Also on that date a Motion for Relief from the Automatic Stay (Doc. I.D. No. 13, the "Motion for Relief from Stay") was filed by the Plaintiff. (Doc. I.D. No. 14.) That motion referred to a complaint and an application for pre-judgment remedy that the Plaintiff had filed with the United States District Court, District of Connecticut (the "District Court Action"). Objections to the Motion for Relief from Stay were filed on June 17, 2005 by the chapter 7 trustee (Doc. I.D. No. 25), the Debtor (Doc. I.D. No. 26), and creditor A & M Construction, Inc. ("A & M")[3] (Doc. I.D. No. 27). A hearing was scheduled for September 21, 2005 on those objections. (Doc. I.D. No. 58.) The Motion for Relief from Stay was marked off at the September 21st hearing, with the right to reclaim retained by the Plaintiff. (9/21/05 Audio Record at 1:46:43–49.)

On June 8, 2005 the Plaintiff filed a Motion for Extension of Time for Filing Complaint Objecting to Discharge or Dis-

**2.** That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings ... arising under Title 11, U.S.C....."

**3.** A & M Construction is listed in Michael Picard's Schedules as a business entity of which he is manager, but he holds no percentage of ownership. A & M Construction is owned by one James Ilewicz and A & M Family Limited Partnership.

chargeability of Debt (the "Motion for Extension of Time") pursuant to Section 727 and Section 523 of the Bankruptcy Code. (Doc. I.D. No. 21.) The Motion for Extension of Time was granted at a September 22, 2005 hearing on the same, with the deadline for filing a complaint seeking only a determination of nondischargeability of debt pursuant to Bankruptcy Code § 523 extended to October 11, 2005. At that hearing, counsel for the Plaintiff proffered that his client did not seek to file a complaint pursuant to Section 727. (9/21/05 Audio Record at 1:47:19–25; Doc. I.D. No. 63.) Upon learning subsequent to the hearing that the Plaintiff also intended to file a complaint pursuant to Section 727, counsel for the Plaintiff filed a motion to vacate the September 22nd order (Doc. I.D. No. 65, the "Motion To Vacate"), but only to the extent that the order prohibited the Plaintiff from filing a Section 727 complaint. The Debtor filed an objection to the Motion To Vacate on October 7, 2005. (Doc. I.D No 70.) Orders entered on November 18, 2005 denying the Motion To Vacate (Doc. I.D. No. 79) and sustaining the Debtor's objection (Doc. I.D. No. 81).

## B. *The Adversary Proceeding*

While the Motion To Vacate was pending, the Plaintiff initiated this adversary proceeding by filing a Complaint for Determination of Dischargeability on October 10, 2005 (Doc. I.D. No. 71, the "Complaint") pursuant to Bankruptcy Code § 523.[4] The Debtor filed the Motion To Dismiss on October 25, 2005. The Objection was filed on November 11, 2005. (Adv.P.Doc. I.D. No. 10.) A hearing was

held on the Motion To Dismiss and the Objection on November 16, 2005 and the matter was taken under advisement, pending timely receipt of post-hearing briefs by the parties. Post-hearing briefing was timely completed.

On January 3, 2006, in the interest of justice and judicial efficiency, the chapter 7 case and both adversary proceedings were reassigned to the Honorable Albert S. Dabrowski, Chief United States Bankruptcy Judge for this district. (Doc. I.D. No. 91.) However, the Motion To Dismiss and the Objection were retained by the undersigned for decision. The matter is now ripe for decision.

## 1. *The Complaint*

The general allegations in the Complaint are as follows. The Plaintiff, a manufacturer of fencing products and materials, extended credit to Atlas Fence, Inc.[5] ("Atlas") for many years "based in part on the representations or misrepresentations" of the Debtor "and/or his agents, servants, and/or employees." (Adv.P.Doc. I.D. No. 1.) The Plaintiff alleges that it has incurred costs and attorneys' fees in exposing the misrepresentations made by the Debtor and unearthing the schemes orchestrated by the Debtor in order to avoid his obligations under a personal guaranty. The Plaintiff alleges that the Debtor was the person in control of Atlas during the relevant time period.

The Complaint sounds in four counts. The first count ("Count One") asserts, pursuant to Bankruptcy Code § 523(a)(2), a debt for money or property obtained by false representations or fraud. Count One

---

4. The Plaintiff also filed an objection to discharge pursuant to Bankruptcy Code § 727(a). (*See* Adv. Pro. No. 05–3141(ASD).)

5. This court takes judicial notice of the Commercial Recording Division files on the Secretary of the State of Connecticut website (*www.concord.sots.ct.gov*) to the effect that Atlas Fence, Inc. is incorporated under the laws of the State of Connecticut.

alleges that the Debtor personally guaranteed payment to the Plaintiff of Atlas' obligations by executing a personal guaranty (the "Guaranty") on March 7, 1994 (Adv. P. Doc. I.D. No. 1, Exhibit A), representing that in the event of default by Atlas, the Debtor would pay the amount due to the Plaintiff, including interest and reasonable attorneys' fees. By executing the Guaranty, Count One alleges, the Debtor also represented that the Plaintiff could bring suit against him without first filing against Atlas, exhausting its remedies against Atlas, or enforcing its rights against any security which may have been pledged as security for such indebtedness. Count One further alleges that, in reliance on the Debtor's continued representations that he would pay the outstanding bills of Atlas, the Plaintiff extended trade credit to Atlas, deferred suing the Debtor and seeking a prejudgment remedy and/or attachment of his property or assets, and continued to ship large quantities of fencing materials to Atlas when the company was insolvent, or in the zone of insolvency. Count One further alleges that the Debtor's representations were false, and that the Debtor made those statements knowing he did not intend to be bound by the terms of the Guaranty. (Adv. P. Doc. I.D. No. 1.)

The second count ("Count Two") of the Complaint alleges, pursuant to Bankruptcy Code § 523(a)(2), a debt for money or property obtained through a false financial statement, claiming that the Debtor knowingly submitted false financial information to his accountant for the year ending December 21, 2002. Count Two alleges that the written financial statement upon which it relied in extending credit to Atlas was materially false in its representation of Atlas' financial condition, and that the Debtor intended to deceive the Plaintiff into relying on this false information. *Id.*

The third count ("Count Three") of the Complaint asserts, pursuant to Bankruptcy Code § 523(a)(4), a debt resulting from fraud or defalcation while acting in a fiduciary capacity, claiming that the Debtor, as an officer of Atlas at all relevant times, with familiarity with the business dealings and financial condition of Atlas, had a fiduciary duty to the Plaintiff when Atlas became insolvent, or was in the vicinity of insolvency. Count Three alleges that the Debtor, *inter alia*, breached his duties of good faith and/or loyalty and due care, concealed relevant information from the Plaintiff, engaged in self-dealing, and engaged in various schemes to defraud the Plaintiff of the rightful payment of its bills. Count Three further alleges that the Debtor failed in his duty to safeguard the assets of Atlas because, among other things, the Debtor was not free from self-interest, he looted Atlas' assets, he violated both his and Atlas' covenant of good faith and fair dealing, he misled creditors, and he failed to seek outside expert advice under circumstances where that advice was reasonably required. *Id.* Count Three further alleges that the Debtor's breach of fiduciary duty caused the Plaintiff specific, personal and direct injury, as well as damages, for which the Plaintiff alleges it is also entitled to receive reasonable attorneys' fees.

The fourth and final count ("Count Four") asserts, pursuant to Bankruptcy Code § 523(a)(6), a debt resulting from willful and malicious injury by the Debtor to another entity for a series of steps the Debtor allegedly took to shield assets when Atlas began to experience financial trouble and/or was in the zone of insolvency. Count Four alleges a laundry list of alleged transfers, loans and establishment of trusts undertaken by the Debtor after he allegedly realized that Atlas was experiencing financial troubles and that its financial condition was becoming precarious.

(Adv. Doc. I.D. No. 1 at 10.) The transfers will be discussed below. Sometime between May and July of 2003, the Debtor obtained a loan of $500,000 from one Frank Ruocco. Count Four alleges that the Debtor testified under oath that he learned on August 13, 2003 that Atlas was in serious financial trouble.[6] Count Four alleges that on October 27, 2003 the Debtor created the Alexandra and Mathew Picard Trust (the "Trust"), selecting his mother (Edith Picard, who was also the chief executive officer of Atlas during the relevant period when Atlas was experiencing financial difficulty) as trustee of the Trust, until July 29, 2009, when the Debtor's mother was replaced by the Debtor's uncle (Donald Picard) as trustee of the Trust. The Trust was allegedly used to shield the Debtor's personal assets. Count Four alleges that neither the Debtor's mother or uncle appeared to have managed the affairs of the Trust but that the Debtor maintained complete domination and control over the Trust.

Count Four further alleges that on October 28, 2003 the Debtor set up the A & M Family Limited Partnership ("A & M Family"), a business entity to which the Debtor allegedly transferred personal assets and/or control over his other companies. The Debtor allegedly served as the general manager of A & M Family and owned a 1% interest and had 100% control; the Trust allegedly was the limited partner of A & M Family and had a 99.9% [sic] ownership interest in A & M Family. The Debtor allegedly transferred in excess of $350,000 in personal assets to A & M Family. On October 3, 2003, the Debtor allegedly transferred $40,500 to a bank account jointly held by the Debtor and his mother, which sum allegedly was later transferred to A & M Family.

Count Four further alleges that, in addition, the Debtor transferred his legal and/or equitable interest in A & M Construction Company, LLC to A & M Family. The Debtor allegedly transferred more than $150,000 from Atlas to himself then to A & M Industries, LLC ("A & M Industries"). A & M Industries allegedly was formed by John Uvino, the vice president and treasurer of Atlas during the critical time period when Atlas allegedly was in the zone of insolvency (approximately two months after the Debtor admitted that he knew Atlas was in financial trouble). The Debtor allegedly also formed, or caused others to form, PGP Group, LLC ("PGP") using personal assets that he allegedly transferred to A & M Family shortly after Atlas became insolvent.

Count Four further alleges that, through A & M Family, the Debtor loaned Rickster Associates, LLC ("Rickster") $320,000 for the sole purpose of enabling a straw man, Richard D'Angelo, to purchase Atlas' assets at a March 13, 2004 auction. Rickster allegedly was formed by Mr. D'Angelo just three weeks prior to the auction of Atlas' assets. The Atlas assets purchased by Rickster allegedly were immediately sent to PGP. A & M Family allegedly has a .01% ownership interest in PGP with 100% voting rights and Rickster allegedly owned the remaining 99.9% of PGP with no voting rights.

Count Four further alleges that the Debtor subsequently transferred his 1% general interest in A & M Family to the PIC Management Group, LLC ("PIC Management") which is owned by the Debtor (1% with all voting rights) and the

---

**6.** The Complaint does not specify when, where, or under what circumstances that testimony took place.

Trust (99% with no voting rights). Count Four further alleges that on March 23, 2005 control over PIC Management was transferred to the Debtor's uncle (named above), who was named member and manager of PIC Management.

Count Four further alleges that the Debtor allowed Mr. Ruocco to place mortgages on three parcels of the Debtor's property without adequate consideration, after the Debtor repaid Mr. Ruocco the $500,000 loan borrowed sometime between May and July of 2003 (*see supra*), such repayment being made before payment or interest was due. Count Four further alleges that on February 27, 2004 approximately $400,000 worth of equipment belonging to Atlas was hidden in a building owned by Mr. Ruocco. Count Four further alleges that all the aforementioned transfers of funds and/or assets were wrongful, willful and malicious, and were performed intentionally and without justification or excuse, and that the Debtor knew that these actions were sure to cause financial harm to the Plaintiff.[7]

The Bankruptcy Court docket for this district reflects that Atlas (aka Atlas Fence, Atlas Fence & Guardrail, Atlas Recreational, and Atlas Outdoor) filed a petition under chapter 7 of the Bankruptcy Code on May 19, 2004. (Case No. 04–32405(ASD).)

### 2. *The Motion To Dismiss*

In the Motion To Dismiss, the Debtor argues that the averments of fraud in Count One are not stated with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure (the "Federal Rules") made applicable here pursuant to Rule 7009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtor directs this court to

the District Court Action Ruling and Order (District Court Doc. I.D. No. 46) dismissing the Plaintiff's complaint in that case for failure to state a claim and failure to plead fraud or mistake with particularity. However, in that ruling, the district court dismissed without prejudice, allowing the Plaintiff to file an amended complaint, correcting the deficiencies. The Plaintiff subsequently filed the amended complaint on October 26, 2004. (District Court Doc. I.D. No. 89.) The Debtor filed a motion to dismiss claims two through six of the amended complaint on October 21, 2004. (District Court Doc. I.D. No. 80.) No action had been taken on that motion to dismiss prior to a dismissal of the case without prejudice on May 10, 2005 (District Court Doc. I.D. No. 176) subsequent to a notice of bankruptcy filed on May 5, 2005 (District Court Doc. I.D. No. 175).

The Debtor argues that, pursuant to Rule 12(b)(6) of the Federal Rules (made applicable here pursuant to Rule 7012 of the Bankruptcy Rules), Count Three also must be dismissed because Count Three fails to allege that the Debtor was acting in a fiduciary capacity within the purview of Section 523(a)(4) of the Bankruptcy Code because controlling case law requires an "express trust." Finally, the Debtor states that Count Four must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules because Count Four fails to allege the willful and malicious injury within the meaning of Section 523(a)(6) of the Bankruptcy Code, claiming that intentional breaches of contract, or mere fraudulent transfers of property in which the creditor has no security interest do not qualify as willful and malicious injury within the meaning of Section 523(a)(6). (Adv. P. Doc. I.D.6.) In addition, the Debtor argues

---

7. Count Four alleges an injury to the Plaintiff. However, a fair reading of Count Four would include injury to the Plaintiff's property (*i.e.,* its receivable from Atlas) as well.

that, because Congress specifically provided for denial of discharge when fraudulent transfers were made within one year of filing of a bankruptcy petition, had Congress intended to allow debts to be non-dischargeable for pre-petition transfers more than one year prior to filing, it would have so provided in Sections 523 or 727 of the Bankruptcy Code. The Debtor reiterates that all the alleged fraudulent transfers in the case at bar occurred more than one year prior to the bankruptcy filing.

### 3. *The Objection*

The Plaintiff argues that Count One should not be dismissed because, *inter alia,* the Complaint places the Debtor on notice of the precise conduct with which he is charged, in conformance with the underlying purpose of Rule 9(b) of the Federal Rules. Count Three should not be dismissed, the Plaintiff argues, because Connecticut law recognizes the existence of a fiduciary duty by officers and directors of a corporation to that corporation's creditors when the corporation is insolvent (or in the "zone of insolvency") and that makes the Debtor a "fiduciary" within the purview of Section 523(a)(4). Finally, the Plaintiff argues that Count Four should not be dismissed because the Complaint sufficiently alleges willful and malicious injury to the Plaintiff by the Debtor within the purview of Bankruptcy Code § 523(a)(6), and that the Debtor's conduct was designed to injure the Plaintiff [or his property]. Consequently, the Plaintiff argues, Counts One, Three and Four should not be dismissed.

## II. *ANALYSIS*

### A. *The Law*

#### 1. *Standard for Motion To Dismiss Pursuant to Rule 9(b)*

Rule 9 states in relevant part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake should be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). "The purpose of Rule 9(b) is to allow a defendant to meaningfully respond to a complaint. To satisfy the first part of Rule 9(b), the pleading must set forth the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation." *Citik Ka Wah Bank Limited New York Branch v. Wong (In re Wong),* 291 B.R. 266, 279 (Bankr.S.D.N.Y.2003). The more relaxed requirement of the second part of Rule 9(b), that state or condition of mind can be averred generally, must not be mistaken for a "license to base claims of fraud on speculation and conclusory allegations." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995) (citing *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990)). Accordingly, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *American Express Travel Related Services Co., Inc. v. Henein,* 257 B.R. 702, 706 (E.D.N.Y.2001).

In finding that a plaintiff's complaint was in compliance with Rule 9(b) in *Cohen v. Koenig,* the Second Circuit noted that "plaintiffs set out the representations on which they relied, stating both what financial figures they were given and what they alleged the true financial figures were. Plaintiffs specified who was alleged to have made the false statements; and they stated the precise dates and places of the meetings at which they alleged the fraudulent statements were made." *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir.1994). This court has held that

Rule 9(b) serves three intended goals: (1) to provide a defendant with fair no-

tice of a plaintiff's claim, (2) to preserve a defendant's reputation, and (3) to decrease strike suits. The Rule permits a plaintiff to generally plead the requisite intent of a fraud claim, but requires the circumstances of the alleged fraud be pled with particularity and assert facts that give rise to a strong inference of fraudulent intent. The rule of particularity, however, does not require that the complaint explain the plaintiff's theory of the case.

*Community Memorial Hospital v. Gordon (In re Gordon),* 231 B.R. 459, 465–66 (Bankr.D.Conn.1999) (citations and internal quotation marks omitted) (Dabrowski, J). Another bankruptcy court in this circuit has held that

> Rule 9(b) is ... to be read in conjunction with Rule 8(a) which requires only a "short and plain statement" of the claims for relief ... In *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111 (2d Cir.1982), the Second Circuit Court of Appeals applied a straightforward test to determine the sufficiency of a claim based on fraud: the Plaintiff need only allege the existence of facts and circumstances sufficient to warrant the pleaded conclusion that fraud had occurred. In so doing, the plaintiff's attorneys would be stating "the circumstances constituting fraud ... with particularity" as required by Rule 9(b).

*Sculler v. Rosen (In re Rosen),* 151 B.R. 648, 655 (Bankr.E.D.N.Y.1993).

### 2. *Standard for Motion To Dismiss Pursuant to Rule 12(b)(6)*

Rule 12(b)(6) states that

[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted.

Fed.R.Civ.P. Rule 12(b)(6) (West 2006).

"A court should dismiss under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Carter Hill Associates v. Town of Clinton (In re Carter Hill Associates),* 188 B.R. 5, 7 (Bankr.D.Conn.1995) (Dabrowski, J) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and *Cohen v. Koenig,* 25 F.3d at 1171). "A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) essentially tests the legal sufficiency of a plaintiff's complaint. Under that Rule, a court must accept the allegations of the challenged complaint as true." *Carter Hill Associates,* 188 B.R. at 7.

In applying the Rule 12(b)(6) standard, "the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Coan v. O & G Industries, Inc. (In re Austin Driveway Services, Inc.),* 179 B.R. 390, 394 (Bankr.D.Conn.1995) (*citing Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993) (internal quotations omitted)) (Shiff, J).

### 3. *Nondischargeability Pursuant To Bankruptcy Code § 523*

"[T]he issue of nondischargeability [is] a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Bankruptcy Code § 523 sets forth the exceptions to discharge under the Code and states in relevant part as follows:

(a) A discharge under section 727, 1141, 1228(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property services, or an extension renewal or refinancing of credit to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ....;

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ...;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C.A. § 523(a) (West 2006).

### a. *Section 523(a)(2)(A)*

■ The elements of fraud under Section 523(a)(2)(A) are "(1) a party made a false representation, (2) the party knew the representation to be false, (3) the representation was made with the intent of deceiving or inducing another to act to his or her detriment, and (4) the other party acted in reliance upon the representation to his or her detriment." *Cooke v. Cooke (In re Cooke)*, 335 B.R. 269, 274–75 (Bankr.D.Conn.2005) (Shiff, J.). *See also Rosenblit v. Kron (In re Kron)*, 240 B.R. 164 (Bankr.D.Conn.1999) (Krechevsky, J.).

### b. *Section 523(a)(4)*

■ The general rule as to corporations "is that directors and officers do not owe a fiduciary duty to creditors of a corporation, except under special circumstances such as when the corporation is insolvent. From the moment a corporation becomes insolvent, its assets are deemed to be held in trust for the benefit of creditors. The rationale for this view is that directors of an insolvent corporation have special knowledge that is unknown to creditors." *In re IDS Holding Co., LLC*, 292 B.R. 233, 238–39 (Bankr.D.Conn.2003) (Krechevsky, J.).

■ "When ... a corporation becomes insolvent or nearly insolvent, the ... courts have recognized that the interests of creditors in the assets of the corporation become senior to those of the corporation's shareholders, for it is from those assets that the corporation's debt to its creditors must be paid.[8] The law thus imposes a constructive trust upon those assets for the benefit of all creditors, and a fiduciary duty upon the corporations's [sic] officers and directors to preserve those assets for the benefit of creditors." *Id.* (citing *Bennett Restructuring Fund, L.P. v. Hamburg*, 2003 WL 178753, at *21 (Conn.Super.Ct., Jan.2, 2003)).

■ In *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d. Cir.1999), the Second Circuit held that "certain relationships not constituting actual [or technical] trusts are within the defalcation exception." *Id.* at 168. The court in *Warhol* stated that

---

8. The entity in *IDS* was a Connecticut limited liability company. Since 1909, Connecticut courts have recognized that at times a director of a corporation may assume fiduciary duties to other persons beyond the corporation and its shareholders. *See Baldwin v. Wolff*, 82 Conn. 559, 74 A. 948 (1909). ("As [defendant] was a director, and thus occupied a position as to creditors of a fiduciary nature, when she knowingly took from the company's treasury what did not belong to her, she was chargeable with constructive fraud.") *See also Saginaw Products Corp. v. Cavallo*, 1994 WL 443145 *4 (Conn.Super.1994) ("[O]fficers and directors are fiduciaries with respect to the corporation and shareholders. When the corporation is insolvent, these duties run to the creditors." (citations omitted)).

[i]t has been clear, at least since [the Bankruptcy Act of] 1841, that the defalcation exception is not limited to express trusts, *i.e.*, situations where a trustee is a beneficial owner of a res held and managed for a named beneficiary. Indeed, the act states as much in specifying 'executor[s], administrator[s], guardian[s] or trustee[s]' and then adding others "acting in any other fiduciary capacity. Moreover, Section 4 of the same act provided that no person should be entitled to a discharge who should apply trust funds to his own use. This heightened restriction which applied to the person rather than the particular debt, indicates that Section 1 applied to a greater range of persons and debts than trustees and misappropriation of trust funds, because that section would otherwise have been superfluous ... [N]umerous cases have applied the defalcation exception to debts owed by corporate officers, notwithstanding the absence of any express trust." *See, e.g., Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281 (1939) ("A director is a fiduciary. So is a dominant or controlling stockholder or group of stockholders. Their powers are in trust.") (citations omitted). *Warhol*, 183 F.3d at 168.

### c. *Section 523(a)(6)*

■ "The word 'willful' in [Section 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "Moreover, ... the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Id.* at 61–62, 118 S.Ct. 974.

■ "As used in section 523(a)(6), malicious means wrongful and without just cause or excuse even in the absence of personal hatred, spite or ill-will. Malice may be constructive or implied. Implied malice may be demonstrated by the acts and conduct of the debtor in the context of the surrounding circumstances." *Navistar Financial Corporation v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87–88 (2d Cir.1996).

### B. *Applying the Law to the Allegations of the Complaint*

#### 1. *Count One: Rule 9(b) as Incorporated by Rule 7009*

■ The Debtor argues that Count One must be dismissed because it is not pleaded with sufficient particularity pursuant to Rule 9(b). Reconciling Rule 9(b) with Rule 8, and in keeping with the law of this circuit, the court finds that the Complaint alleges the existence of facts and circumstances sufficient to state a claim for fraud, and it provides the Debtor with fair notice of the claims against him.[9] Count One will not be dismissed.

#### 2. *Count Three: Section 523(a)(4) of the Bankruptcy Code*

■ The Debtor asserts that Count Three must be dismissed because it fails to allege that the Debtor was acting in a fiduciary capacity within the purview of Section 523(a)(4) of the Bankruptcy Code,

---

**9.** For example, Count One alleges that the Debtor executed the Guaranty with no intention of performing under it. That allegation is sufficient to state a fraud under Section 523(a)(2)(A). *Cf. American Express Centurion Bank v. Truong (In re Truong)*, 271 B.R. 738 (Bankr.D.Conn.2002).

arguing that in order to prove a claim under § 523(a)(4), the debt must result from a fiduciary's defalcation under an express or technical trust (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). Because the Plaintiff makes no allegation of a technical or express trust, the Debtor argues, Count Three must be dismissed.

The court is unconvinced by the Debtor's argument, reading *IDS Holding Company, LLC,* above, for the premise that under Connecticut law, there is fiduciary duty "from the moment a corporation is insolvent [or nearly insolvent], [and said corporation's] assets are to be held in trust by its officers and directors for creditors." *Id.* at 238. It is the court's observation that modern case law, particularly in this circuit, has declined to construe *Davis* to hold that Section 523(a)(4) invariably applies only to express or technical trusts. *See Warhol, supra* (attorney a "fiduciary" within the purview of Section 523(a)(4)). *See also Republic of Rwanda v. Uwimana (In re Uwimana),* 274 F.3d 806 (4th Cir. 2001) (foreign ambassador a "fiduciary" for his country within the purview of Section 523(a)(4)). It is true that certain cases refer to a "constructive trust" imposed for the benefit of creditors of an insolvent corporation. *See, e.g., In re IDS Holding Co., LLC,* 292 B.R. at 239. However, such a trust is not a trust ex maleficio because it arises when the corporation enters the requisite financial state, not when the officer/director performs the allegedly wrongful act. *Cf. Davis v. Aetna Acceptance Co.,* 293 U.S. at 333, 55 S.Ct. 151 ("It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto.").

Accordingly, this court reads *Warhol* and *IDS* and relevant state-court cases in conjunction to support the proposition that an allegation that the Debtor, as an officer of Atlas, was placed in a fiduciary capacity as to Atlas' creditors when Atlas became insolvent (or entered the "zone of insolvency") is a sufficient allegation of "fiduciary" status within the purview of Section 523(a)(4). Moreover, in the Second Circuit, conduct by a debtor in a fiduciary capacity that is deemed "sufficiently at odds with his fiduciary obligations ... constitute[s] a defalcation within the meaning of Section 523(a) [even in the absence of an express or technical trust]." *Warhol* at 173. Count Three will not be dismissed because it alleges that the Debtor was placed in the position of fiduciary when Atlas became insolvent (or entered the "zone of insolvency"), and as such, his actions may be proved to be "sufficiently at odds" with his alleged fiduciary duties.

### 3. *Count Four: Section 523(a)(6) of the Bankruptcy Code*

The Debtor argues that Count Four fails to allege willful and malicious injury within the meaning of Section 523(a)(6) of the Bankruptcy Code, and argues that had Congress intended to allow debts to be nondischargeable because of prepetition fraudulent transfers effectuated more than one year prior to filing, it would have so provided in Sections 523 or 727. (Adv. P. Doc. I.D. No. 6.) Each argument is considered below.

#### a. *Willful and Malicious Injury*

The court concludes that the Debtor's transfer of his own property does not result in a Section 523(a)(6) nondischargeability claim on the facts alleged here. The Debtor was contractually liable to the Plaintiff on the Guaranty. His alleged transfers may have made him incap-

able of performing on the Guaranty thus breaching and "injuring" it in some sense. However, a breach of contract unaccompanied by tortious conduct (*e.g.*, conversion of collateral) does not give rise to a Section 523(a)(6) nondischargeability claim. *See Quarre v. Saylor (In re Saylor)*, 108 F.3d 219 (9th Cir.1997) (debtor engaged in fraudulent transfer to avoid liability on a lease; debt discharged because no tort). *See also Snoke v. Riso (In re Riso)*, 978 F.2d 1151 (9th Cir.1992) (debtor's injury to creditor's right of first refusal under a contract for sale of real estate to the debtor was not an injury to "property" within the purview of Section 523(a)(6)); *McCarthy v. Radcliffe (In re Radcliffe)*, 317 B.R. 581, 588 (Bankr.D.Conn.2004) (debt for breach of promise to repay loan discharged absent proof of tortious conduct) (Krechevsky, J.)[10] *Cf. Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir. 2001) (breach of a contractual duty to pay wages gave rise to a nondischargeable debt under Section 523(a)(6) because prompt payment of wages due an employee is a fundamental public policy under applicable law and, thus, a bad faith failure to pay the same constitutes a tort).

However, to the extent that the Debtor is liable in damages to the Plaintiff for the transfer of Atlas' assets (rather than his own assets), Count Four should not be dismissed. That is because the liability of the Debtor to the Plaintiff in respect of such transfer would not arise from the Guaranty but, rather, from an "injury" to

the Plaintiff's property (*i.e.*, the receivable owing from Atlas).[11] *Cf. Murray v. Bammer (In re Bammer)*, 131 F.3d 788 (9th Cir.1997) ("[The Debtor] knowingly injured Murray's right to recover money [from the Debtor's mother] to which [Murray] . . . was entitled;" nondischargeable debt under Section 523(a)(6)); *McCain Foods USA Inc. v. Shore (In re Shore)*, 317 B.R. 536 (10th Cir.BAP2004) ("In contrast to *Saylor*, here the UFTA judgment established a right to payment based on the damage . . . [the debtor] . . . did to McCain's interest [in a receivable due from a corporation of which the debtor was an officer and director];" nondischargeable debt under Section 523(a)(6)); *Nahman v. Jacks (In re Jacks)*, 266 B.R. 728 (9th Cir.BAP2001) (debtor principal's pledge of corporate assets to guarantee his personal debt injured the creditor's receivable from the corporation and could result in a Section 523(a)(6) nondischargeable debt).

The Debtor may be liable to the Plaintiff for the transfers of Atlas' assets on one or more theories. For example, if the Debtor is deemed to be the transferee of the Atlas assets (either *per se* or on a "piercing" theory), he may be liable to the Plaintiff in damages as a result. *See Robinson v. Coughlin*, 266 Conn. 1, 830 A.2d 1114 (2003); *Litchfield Asset Management Corp. v. Howell*, 70 Conn.App. 133, 799 A.2d 298, *cert. denied*, 261 Conn. 911, 806 A.2d 49 (2002).[12]

---

**10.** *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238 (Bankr.S.D.N.Y.2000), *supp'd by* 253 B.R. 592 (2000), *correct'd by* 329 B.R. 17 (2005), which distinguished *Saylor*, is inapposite here because there is no Connecticut analogue to the New York statute creating a cause of action for attorneys' fees against a fraudulent transferor. *Cf. Kovler*, 249 B.R. at 262 n. 17. To the extent (if any) that *Kovler* otherwise would be apposite, this court respectfully disagrees.

**11.** The "willful and malicious" nature of the injury may be proved at trial from all the facts and circumstances. *See, e.g., Stelluti*, 94 F.3d at 88.

**12.** It is not the court's function to suggest other theories of potential liability.

### b. *Implied Temporal Limit*

■ The Debtor argues that because Bankruptcy Code § 727(a)(2)(A) and § 727(a)(7) [13] deny a discharge to a debtor transferor with respect to an actual fraudulent transfer perpetrated within the year prior to bankruptcy, but do not impose such a penalty for earlier fraudulent transfers, Congress similarly intended to eliminate Section 523(a)(6) remedies for such transfers perpetrated before the one year period. That argument is unpersuasive.

The Debtor's argument would be more persuasive if the creditors' remedy under Section 727(a)(2) and/or Section 727(a)(7) were more similar to their remedy under Section 523(a). Section 727(a) provides for a complete denial of discharge. Section 523(a) limits the effect of a discharge that has been entered. If a Section 523(a) remedy were available to *all* creditors, then the two remedies would look substantially similar.

Ignoring the temporal limitation for present analytical purposes, if the Debtor did in fact fraudulently transfer his own assets, he could be denied a discharge under Section 727(a)(2). However, as noted above, creditors would have a Section 523(a)(6) remedy for such conduct only if there were tortious conduct. As explained above, the Plaintiff has not alleged the requisite tortious conduct. Accordingly, the Section 727(a)(2) and the Section 523(a)(6) remedies are not sufficiently similar to persuade the court that the statutory absence of one remedy (because of the temporal limitation in Section 727(a)(2)) necessarily implies the absence of the other.

Again ignoring the temporal limitation for present analytical purposes, if the Debtor did in fact fraudulently transfer Atlas' assets, he could be denied a discharge under Section 727(a)(7). However, only creditors of Atlas then would be able to assert a Section 523(a)(6) nondischargeable claim in this case. Creditors who were creditors of the Debtor but not creditors of Atlas would not be able to assert a Section 523(a)(6) nondischargeable claim in this case for the same conduct. Again, the creditors' Section 523(a)(6) remedy is not sufficiently similar to the creditors' Section 727(a)(7) remedy to persuade the court that the statutory absence of one remedy (because of the temporal limitation in Section 727(a)(7)) necessarily implies the absence of the other.

It is true that, when the fraudulent transfer is by a third party individual to an individual debtor and occurs outside the one-year period, there may be a lack of symmetry between the penalties imposed on them if both are in bankruptcy. That is because Section 523(a)(6) may not apply to the transferor for the reasons discussed above and Section 727(a)(2) does not apply in either case on its face. On the other hand, for the reasons discussed above, the

---

**13.** Bankruptcy Code § 727 states in relevant part as follows:

> (a) The court shall grant the debtor a discharge unless—
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition;
>    \*    \*    \*    \*    \*    \*
> (7) the debtor has committed any act specified in paragraph (2) ... of this subsection, on or within one year before the date of the filing of this petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider ...

11 U.S.C.A. § 727(a) (West 2006)

debt of the debtor transferee may be excepted from discharge in his case pursuant to Section 523(a)(6). Although there is a lack of symmetry in that situation, it is not so shocking as to compel the conclusion that Congress intended absolute symmetry in the two bankruptcy cases. For example, Congress may have believed that the harshness of a complete loss of discharge for fraudulent transfers perpetrated by the debtor as transferor during the one-year period compared equitably to the less harsh (but not time limited) penalty of exception from discharge of the subject debt for the fraudulent transferee of third-party assets. Given the foregoing, it is not for this court to graft an exception onto Section 523(a) when Congress did not see fit to draft one expressly.

## III. *CONCLUSION*

For the reasons set forth above, the Debtor's Motion To Dismiss is granted as to Count Four but only with respect to transfers of the Debtor's own assets. The remainder of the Motion is denied. The Objection is overruled and sustained to the same extent.

It is **SO ORDERED**.